## Mullins v. Commonwealth.

(Decided March 20, 1925.)

### Appeal from Bell Circuit Court.

1.  Criminal Law—Overruling of Demurrer to Warrant Supplied by Agreement of Parties After Loss of Original Held Not Error, where Supplied Warrant Valid and Complete.—Where warrant on which defendant was arrested was lost after his trial in police court, and another supplied by agreement of parties, which supplied warrant met all requirements of law, held that since if origi-

nal warrant had been produced defects therein might have been cured by amendment, court did not err in overruling demurrer to supplied warrant.

2. Intoxicating Liquors.—Statutory Exception Need Not be Negatived in Warrant.—Though statutory exceptions must be negatived in an indictment charging unlawful possession of intoxicating liquors, warrant need not negative such exceptions.

3. Intoxicating Liquors—Possession of Jamaica Ginger for Beverage Purposes Unlawful.—Though, under Acts 1922, chapter 33, section 26, possession of Jamaica ginger for medicinal or flavoring purposes is not unlawful, in view of sections 1 and 2, such possession is unlawful, where it is used for beverage purposes.

4. Intoxicating Liquors—Evidence Held to Sustain Conviction of Possession of Jamacia Ginger for Beverage Purposes.—Evidence held to sustain conviction of unlawful possession of Jamaica ginger for beverage purposes.

M. G. COLSON for appellant.

FRANK E. DAUGHERTY, Attorney General, and LAURENCE K. RICE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE— Affirming.

The appellant, Tom Mullins, by this appeal, seeks the reversal of a judgment of the Bell circuit court, based upon a verdict finding him guilty of the offense, charged by warrant, of "unlawfully having in his possession intoxicating liquor, to-wit: 'Jamaica ginger;' commonly called 'jake,' knowingly for use as an intoxicating beverage." The verdict and judgment fixed his punishment at a fine of $100.00 and imprisonment of 60 days in jail. The warrant was issued by the judge of the Middlesboro police court and the appellant first tried and convicted in that court, the punishment then inflicted being a fine of $300.00 and 60 days' imprisonment in jail. His trial and conviction in the circuit court followed his prosecution of an appeal to that court from the judgment of the police court.

It is insisted by the appellant as a ground for the reversal of the judgment that the trial court erred to the prejudice of his substantial rights in overruling his demurrer to the warrant. It appears from the bill of exceptions that the warrant on which the appellant was arrested and under which he was tried in the Middlesboro police court in May, 1924, was lost after his trial in that court and could not be produced on his subsequent

trial in the circuit court, which took place in November, 1924. So upon the calling of the case for trial in the latter court, by agreement of the parties, its loss was supplied by another warrant written and signed, as was the first, by the judge of the Middlesboro police court, which was used on the trial; and whether the lost warrant was defective or otherwise we need not stop to inquire, as we find the substituted one, to which the demurrer was filed, sufficient in form and substance to meet all requirements of the law. This we think will appear from the language of the warrant which (omitting its commands to the officers charged with its execution and signature of the judge of the police court) is as follows:

"It appearing that there are reasonable grounds for believing that on or about the 12th day of May, 1924, and before the issuing of this warrant, Tom Mullins committed the offense of unlawfully having in his possession intoxicating liquor, to-wit, Jamaica ginger, commonly called 'jake,' knowingly for use and as an intoxicating beverage in the city of Middlesboro, Bell county, Kentucky, you are commanded to arrest the said Tom Mullins and bring him before the judge of the Middlesboro police court to be dealt with according to law, and then and there have this writ, with due return of how you have executed it.

"Given under my hand this the 12th day of May, 1924."

Moreover, had the original warrant been produced on the trial in the circuit court, such defects as might have appeared therein could have been cured 'by amending it in that court. So whether the supplied warrant be treated as a substitute for, or an amendment to the lost warrant, from no point of view can it be declared that the overruling by the trial court of the appellant's demurrer thereto was error.

Nor was it necessary for the warrant to charge that the appellant's possession of the Jamaica ginger was not for "sacramental, medicinal, scientific or mechanical purposes." While we repeatedly have held that statutory exceptions must be negatived in an indictment charging the unlawful possession of intoxicating liquor (Dials v. Comlth., 192 Ky. 425; Rickman v. Comlth., 195 Ky. 715; Shepard v. Comlth., 197 Ky. 481), we have as frequently held it unnecessary that a warrant should

charge the offense with the same particularity, hence it need not negative the exceptions. Johnson v. Comlth., 197 Ky. 291; Pulliam v. Comlth., 197 Ky. 410; Thacker v. Comlth., 199 Ky. 524; Vanover v. Comlth., 202 Ky. 813.

The appellant's complaint of the overruling by the trial court of his motion in arrest of the judgment is equally untenable. This contention is attempted to be rested upon certain provisions of chapter 33, section 26, Acts General Assembly, 1922, commonly called the "Rash-Gullion Act," it being claimed that Jamaica ginger is either a "medical preparation," as defined by subsection b, section 26, or a "flavoring extract," as defined by subsection e, of section 26, and that as by other provisions of section 26, its sale is permitted for other than beverage purposes, its possession by a purchaser for a medicinal purpose cannot be deemed unlawful. It is true that in Walker v. Comlth., 197 Ky. 266, and also in Howard v. Comlth., 197 Ky. 298, and other cases, we held that it is not unlawful to sell, or keep for sale, any of the liquids enumerated in subsections a, b, c and d, section 26, chapter 33, Acts 1922, and that the only offense connected with the sale thereof is that of the seller's knowingly selling them for beverage purposes or selling them under such circumstances as that he might reasonably infer it was the intention of the purchaser to use them for such purpose. But it was not held, or intended to be declared, in those cases that where one, having any of such liquids or articles in his possession, whether acquired by purchase or otherwise, is proved to have used, or to be using them for beverage purposes and for their intoxicating effect, such possession is or would be lawful.

By section 1, of the act, *supra*, it is declared an offense, punishable as provided under section 2 thereof, for any person to "have in possession" spirituous, vinous, malt or intoxicating liquors, except for the purposes therein defined; and the phrase "or intoxicating liquor" appearing in this section, was intended to and will include any and all of the extracts or liquids, containing "one-half of one per centum or more alcohol by volume," mentioned in section 26 of the act, *supra,* that may be manufactured, sold or possessed for beverage purposes. It may be conceded, therefore, that one may lawfully have in his possession Jamaica ginger for medicinal or

flavoring purposes, but such possession will not be lawful if the liquid be used for beverage purposes, or intended for such use. So in the case at bar our only remaining duty is to determine whether the evidence heard on the appellant's trial so conduced to prove his guilt of the offense charged, as to give support to the verdict.

The evidence introduced by the Commonwealth on the appellant's trial clearly shows that, immediately after engaging in a fight with another or others, he was arrested at a late hour of the night in Middlesboro by a police officer for drunkenness and disorderly conduct, an offense committed in the officer's presence. The latter and two other policemen appearing about the time of the arrest, each testified that appellant was "reeling drunk" and by reason thereof fell to the street from an automobile in which he was riding; and that following his arrest they discovered on his person and in his possession two pint bottles, one of them filled and the other nearly half filled with Jamaica ginger. The appellant, in testifying in his own behalf, denied that he was drunk or disorderly, but admitted his possession of the bottles of Jamaica ginger, which he claimed to have purchased of a negro man whose name he failed to give. He testified that his purchase of the Jamaica ginger from the unknown negro was made in Middlesboro a few minutes before his arrest, and admitted that at 3:30 o'clock in the afternoon of the day of the arrest he had, before leaving his home, "drunk half a bottle of the ginger." He also admitted that he had been drinking Jamaica ginger for three years, but claimed that its use by him was as a medicine and remedy for the "cramps." He did not claim, however, that the remedy had been prescribed or advised by a physician, or state to what extent, if any, it had relieved him of the "cramps." The only explanation he gave of the absence of more than half of the contents of one of the pint bottles of Jamaica ginger found on his person was that such was its condition when he purchased it; and that the negro man from whom he got it said, in substance, that the two pint bottles, one full and the other half full of Jamaica ginger, was all he had left; and that as he wished to leave town, he would sell him (appellant) the two bottles and contents at the price of $3.75, which offer the latter accepted and, upon then receiving the bottles, paid.

In addition to the evidence mentioned one, Ashby De Busk, introduced by the Commonwealth as an expert,

testified without contradiction from any source that "Jamaica ginger runs (contains) from 92 to 96 per cent alcohol." Yet another witness in behalf of the Commonwealth, Henry Jackson, testified that he was well acquainted with the general reputation of the appellant, which with respect to engaging in the illicit handling of and traffic in intoxicating liquors was bad, because it is that of a person regarded as an illegal handler of and trafficker in such liquors and also an excessive drinker thereof. And no evidence was offered by the appellant to repel the attack made by the Commonwealth upon his reputation through the testimony of Jackson.

Manifestly the evidence as a whole strongly conduced to prove that the Jamaica ginger discovered on the person of the appellant was in his possession for consumption as a beverage; that it was so used by him because of its intoxicating effect and that his claim of having purchased it as a medicine for "cramps" was a mere pretense or subterfuge too thinly disguised to hide its own nakedness. That he had not purchased the Jamaica ginger for medicinal use is shown by the absence of any evidence conducing to prove that its use for that purpose was customary or proper; also by the established fact that the quantity in his possession was greater than was necessary to be carried on his person for such purpose; and by the further admitted fact that it was purchased by him of a bootlegger instead of a reputable dealer qualified, as authorized by the provisions of section 26 of the statute, *supra,* to sell such a liquid for purposes other than as an intoxicating beverage.

The appellant's possession of the Jamaica ginger for use as an intoxicating beverage is also shown by the fact and accompanying circumstances, appearing from the evidence, that he was greatly intoxicated when it was discovered on his person, which condition was not shown to have resulted from any other cause than his drinking of the liquid in his possession; for the Jamaica ginger he claimed to have imbibed at his home early in the afternoon could not alone have produced so gross a state of intoxication as that under which he was laboring when arrested. And when to the facts and circumstances mentioned is added the uncontradicted evidence of the appellant's reputation as a trafficker in and excessive drinker of intoxicating liquors, the conclusion cannot be escaped that the jury's rejection of his defense was justifiable.

It follows from what we have said that the appellant was not, as claimed in his final contention, entitled to a directed verdict of acquittal.

As no reason is presented by the record for disturbing the verdict, the judgment is affirmed.