## Commonwealth v. Croft.

(Decided March 27, 1925.)

Appeal from Crittenden Circuit Court.

1. Banks and Banking—Crime of Knowingly Assenting to Receiving of Deposits with Knowledge that Bank Insolvent is Malum Prohibitum and Not Malum in Se.—Before adoption of Ky. Stats., section 597, it was not crime for president of bank to knowingly assent to receiving of deposits with knowledge that bank was insolvent, and hence offense is not malum in se, but malum prohibitum, and words of statute must therefore be given their natural and reasonable meaning.

2. Banks and Banking—Criminal Law—The Crime of Knowingly Assenting to Receiving of Deposits by Bank President Knowing Bank Insolvent Constitutes Separate Offenses, and Trial as to One Act Not Bar to Trial for Another.—Under Ky. Stats., section 597, making it a crime for bank president to knowingly assent to receiving of deposits by bank with knowledge that bank is insolvent, each separate act constitutes a separate offense, and the trial of a bank official for receiving a deposit on a given day from a named person does not bar a trial of same official upon like charge of receiving deposit from a different person upon a different occasion.

3. Criminal Law—Conviction of Knowingly Assenting to Receiving of Deposits from Named Person on Named Date Knowing Bank to be Insolvent Not Bar to Prosecution for Similar Acts Prior Thereto.—An acquittal or conviction of a bank president for knowingly assenting to receiving of deposits by bank from a named person on a named date, knowing bank to be insolvent, in violation of Ky. Stats., section 597, would not bar prosecution on indictment for receiving deposits at any time previous to date named in first indictment, since evidence to sustain first indictment would not sustain other and there is no identity of time or circumstances between the two.

4. Banks and Banking—Actual Knowledge Unnecessary to Sustain Conviction of Bank Predident for Knowingly Assenting to Receiving of Deposits with Knowledge that Bank Insolvent.—To sustain a conviction of a bank president for knowingly assenting to receiving of deposits by bank with knowledge that bank is insolvent in violation of Ky. Stats., section 597, Commonwealth is not required to prove actual knowledge on part of president in reception of deposits.

FRANK E. DAUGHERTY, Attorney General, F. C. BENNETT, Commonwealth Attorney, JOHN L. GRAYOT and WM. J. COX, Assistant Commonwealth Attorneys, for appellant.

J. W. BLUE, JR., and A. C. MOORE for appellee.

Opinion of the Court by Judge Sampson—Certifying the law.

Appellee Croft was indicted in the Crittenden circuit court under section 597, Kentucky Statutes, for knowingly assenting to the receiving of deposits by the Bank of Tolu, of which he was president, at the time knowing the bank to be insolvent, and was found not guilty by a directed verdict.

The Commonwealth prosecutes this appeal for a certification of the law, there being several other indictments against appellee Croft charging the same crime.

The bank closed its doors on August 4, 1923. It is. averred in the indictment that appellee, Croft, knowingly assented to the receiving of a deposit from George Holloman for $250.00 on July 14, 1923, about twenty days before the institution was closed. Appellee, Croft, has been twice tried and acquitted. An indictment accusing him of knowingly assenting to the receiving of deposits on the 28th of July, 1923, from one John Alvis, was the basis of the first trial and verdict of acquittal. On the trial of the case from which this appeal is prosecuted appellee, Croft, pleaded former trial and acquittal in bar. of the prosecution and also pleaded not guilty. At the conclusion of the evidence for the Commonwealth he moved for a directed verdict in his favor, and this motion, over the objection of the Commonwealth, was sustained, and it is of this ruling of the trial court that the Commonwealth complains upon this appeal.

The statute, section 597, omitting the irrelevant parts, and reading it with respect to the president of the bank, is in these words:

"Any president . . . of any bank . . . who shall receive or assent to the receiving of *deposits* after he shall have knowledge of the fact that such bank . . . is insolvent shall . . . be guilty of a felony, etc."

It is the contention of appellee Croft that he could not be tried and convicted on the indictment on which he was last tried, accusing him of knowingly assenting to the receiving of a deposit from Holloman on July 14, after he had been tried and acquitted on another indictment under the same statute for the offense of receiving a deposit from Alvis, on July 28th, fourteen days subsequent to the date of the Holloman deposit, for the reason that the law under which he was indicted uses the plural, "deposits," the inference being that he can be tried but once for the crime of knowingly assenting to the receiving of deposits after he has knowledge of the insolvency of the bank, or at least only once for that crime up to a given time.

It is insisted by appellee that his acquittal under indictment No. 515 is a bar to trial on indictment No. 517, the one now before us, because the offense charged in indictment No. 517 is the same as that charged in indictment No. 515 on which he was first tried. One of the most thoroughly considered opinions of this court under

section 597, Kentucky Statutes, is that of Parrish v. Com., 136 Ky. 77, where we set forth, in some measure, the elements of the crime denounced by the statute and the facts necessary to be established by the evidence in order to warrant a conviction, saying in part:

"In prosecutions under the statute it is indispensable that the Commonwealth shall establish three facts: First, that the *deposit described in the indictment* was actually received; second, that *at the time.* it was received the bank was insolvent; third, that the officer indicted had knowledge of its insolvency, and with such knowledge, assented to receiving the deposit."

It will be observed that the statute under which this prosecution was instituted, is general in these terms: "any president . . . of any bank . . . who shall receive or assent to the receiving of deposits, after he shall have knowledge of the fact that such bank . . . is insolvent . . . shall be guilty of a felony." But it does not add that the "reception of each deposit shall be a separate offense," or words of like import as is the case with many statutes denouncing acts as offenses, such as Sabbath breaking, failing to take out a license, etc.

Before the adoption of a statute on the subject it was not a crime for a president of a bank to receive deposits or assent to the reception of a deposit at a bank of which he was president, with the knowledge that the bank was insolvent. The offense is not *malum in se* but *malum prohibitum.* We must, therefore, measure appellee Croft's legal responsibility by the words of the statute, giving to them their natural and reasonable meaning, but not extending them beyond their common import. The same statute makes the president of a bank "individually responsible for such deposits so received" as well as guilty of a felony. The Commonwealth might have accused appellee, Croft, so appellee argues, of the crime of assenting to the receiving of deposits with the knowledge that the bank was insolvent without specifying any particular deposit, and on trial produced evidence of any or all deposits made with his knowledge after the bank became insolvent, and of which he knew. In such a situation, it will be conceded by all, appellee says, the Commonwealth would have been estopped to prosecute appellee upon another indictment for the crime of assenting to the reception of deposits. We have so

held, he argues, in a number of cases, including that of Commonwealth v. Robinson-Petit Co., 181 Ky. 702, a prosecution under subsection 2 of 2569b, Kentucky Statutes, prohibiting the shipper of intoxicating liquors from putting a false indorsement "for medicinal purposes" on the shipment of whiskey into local option territory, saying:

"It has frequently been held by this court that in a prosecution of this character the Commonwealth has the right to confine itself to any particular offense of the defendant within the year preceding the date of the indictment, or it may, if it so desires, cover the whole year; and, if upon the whole evidence, guilt is established, a conviction may be had without reference to which particular act the jury may believe was done in violation of law."

But the facts of the instant case are different. The indictment accuses appellant of receiving a deposit on a named day from a named person, at the time knowing the bank to be insolvent.

Such a construction of the statute under consideration would be, we think, entirely too strained and narrow. The General Assembly did not so intend it to be understood. The plural of the word "deposit" ought not to be given such unusual importance in a statute with nothing to aid it. To receive a single deposit, knowing at the time that the bank is insolvent, is a crime under the statute, all admit. That being true, would not each separate subsequent like act constitute another offense, and subject the offender to another penalty? Might not the grand jury indict a bank president for receiving the tenth deposit knowing the bank to be insolvent and ignore all nine preceding acts of like character, and if the evidence warranted it, bring about a conviction without reference to any previous act of a similar nature? If this can be done, why could not the Commonwealth select any other deposit, single it out, ignore all others, indict a bank official for knowingly receiving a deposit with knowledge of the insolvency of the bank, prove it and cause his conviction? We think this manifest. Then why should it be held that the trial of a bank official for receiving a deposit upon a given day from a named person bar a trial of the same official upon a like charge of receiving deposit from a different person upon a different occasion? We do not think that the General Assembly

intended that the statute should be given such narrow construction as to preclude the trial of a bank official a second time where he had received deposits from different persons upon different occasions.

There is yet another interesting phase of this case, insisted upon by appellee, Croft, based upon the theory that the prosecution under indictment No. 515, which was for assenting to the receiving of deposits at the bank on July 28th, was a bar to a trial of appellee upon an indictment for receiving deposits any previous time. In other words, it is claimed an acquittal or conviction upon an indictment for receiving deposits on July 28th, would preclude the Commonwealth from prosecuting appellee on an indictment for receiving deposits at any time previous to that date. The cases of Cawein v. Com., 110 Ky. 273; Com. v. Standard Oil Company, 28 R. 1376; Standard Oil Co. v. Com., 29 R. 19, are relied on in support of this proposition. In the Cawein case it was held that a keeper of a pool room in which betting on horse races was conducted during several months, the house never being vacant, that a conviction barred any further prosecution for an offense committed prior to the former indictment, the offense being a continuing one.

It cannot be said from the facts of this case that there was an "identity of time" or "identity of circumstances" in the two cases upon which appellant Croft has been tried. Under indictment No. 515 appellee Croft was accused of knowingly receiving a deposit from Alvis of a named sum, at the time knowing that the bank was insolvent. In the prosecution under the indictment No. 517 appellee Croft was accused of receiving a deposit from one Holloman of an entirely different sum and upon an entirely different date. The first was on July 14th and the second upon July 28th, 1923. Clearly the indictments accused appellee Croft of two separate and distinct crimes, not identical in time or circumstances. Moreover, the evidence introduced under indictment No. 515 to establish that appellee Croft received a deposit from one Alvis on the 14th of July would not have sustained the indictment accusing appellant of receiving a deposit from Hollman on July 28th, the amount of deposits being different.

The Commonwealth also insists upon this appeal that the trial court erred in sustaining the motion for peremptory instruction for Croft in ruling that actual knowledge of the deposit made by Holloman must be

shown by the evidence to have been possessed by appellee Croft in order to warrant a conviction.

If the learned trial judge based the peremptory instruction in Croft's favor upon the theory that the Commonwealth was required to prove actual knowledge on the part of the president in the reception of deposits, it was in error. This matter was settled in the case of Parrish v. Com., *supra,* where, among other things, we said:

"It is also said that the Commonwealth should have shown that Parrish received himself the deposit, or assented to the receiving of it, by directing an employe to receive it, or being present when it was received. It is not necessary that the Commonwealth should prove either of these facts. When evidence was introduced that Parrish was president of the bank, and that it remained open for the transaction of business and the reception of deposits with his consent or with his knowledge, the law will presume that he assented to the receiving of the deposit, and charge him with notice that it was received, if the books or records of the bank so showed."

We are of opinion that the Commonwealth was entitled to have the case submitted to the jury on the evidence, and that the trial court erred in directing the jury to find and return a verdict for appellee Croft, and the law is so certified.