Curt COLWELL and Elmer Kilburn, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 12, 1958.

Rehearing Denied Feb. 13, 1959.

Carl Eversole, Hazard, for appellants.

Jo M. Ferguson, Atty. Gen., Edward L. Fossett, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

Appellants, Curt Colwell and Elmer Kilburn were convicted of murder and were sentenced to life imprisonment. They seek a reversal of the judgments on the following grounds: (1) The verdict is not supported by the evidence; (2) six members of the jury were ineligible to serve as jurors; (3) one juror did not correctly answer questions on his voir dire examination; (4) separation of the jury; (5) prosecuting attorney's argument to the jury was prejudicial; and, (6) newly discovered evidence and prejudicial activity by the circuit court clerk.

Appellants were convicted of killing Lillie Valentine who operated a restaurant in the village of Combs. On December 22, 1957, at approximately 5:00 P.M., two shots were fired through the front window of the Valentine restaurant. The first shot seriously wounded Paul Napier who was sitting in a booth in the restaurant and the second shot instantly killed Lillie Valentine who was standing near Paul Napier.

Paul Napier, the son-in-law of Lillie Valentine, testified that immediately prior to the shooting he saw appellants in an automobile owned by Kilburn's father and driven by appellant Kilburn parked in front of the restaurant. He next saw appellant Colwell at the front window of the restaurant with a gun in his hand. Napier stated that Colwell fired a shot into the restaurant. The shot hit Napier in the head and rendered him unconscious.

Frankie Valentine, a daughter of Lillie Valentine, testified that she was sitting at a table in the restaurant talking with her mother and Paul Napier when a shot was fired through the front window of the restaurant. She said she then saw Colwell on the sidewalk in front of the restaurant with a shotgun and that Colwell fired the second shot which killed her mother.

On cross-examination Paul Napier and Frankie Valentine admitted withholding identification of the perpetrators of the crime for several months after the shooting occurred. Napier explained his delay in identifying appellants as the guilty parties by stating that he had been incapacitated by his head wound, and Frankie Valentine's explanation was that she had been afraid to make the accusation.

There was evidence to the effect that appellants had been involved in a disturbance in the Valentine restaurant several days before Mrs. Valentine was killed and Mrs. Valentine had caused appellants' arrest on some minor charge growing out of their participation in the affair. There was also testimony that appellant Colwell had made a threat against Mrs. Valentine following his arrest.

Appellants denied that they were involved in the crime. They testified that they were attending a picture show at the time the shooting occurred and their alibi was supported by the testimony of Kilburn's wife.

Appellants contend that the testimony of Napier and Frankie Valentine, when considered in its entirety, is so incredible that it is unworthy of belief. However, it cannot reasonably be said that the testimony of these witnesses should be disregarded as being without evidentiary value. While their failure to immediately name appellants as the culprits was unusual, their testimony was not inherently improbable or so opposed to all reasonable probabilities as to be manifestly false. That being true, the credibility of these witnesses was a matter to be determined solely by the jury. Chaffins v. Commonwealth, Ky., 275 S.W.2d 52; Amburgey v. Commonwealth, 287 Ky. 421, 153 S.W.2d 918; McGuire v. Commonwealth, 287 Ky. 717, 155 S.W.2d 37. Under the conclusion we have reached, there was sufficient evidence to take the case to the jury and to sustain the verdict rendered.

It is urged that appellants' substantial rights were prejudiced because the names of six members of the trial jury did not appear on the last returned tax commissioner's book for the county. The fact that the name of a juror does not appear on the last tax roll of the county is not a cause for challenge unless it is further shown that the juror's name does not appear on the last returned voters' registration book. KRS 29.045(3). Since appellants have failed to establish that the jurors were not listed on the last voters' registration book, the contention that the case was tried by ineligible jurors is without merit.

Complaint is made that appellants did not receive a fair trial because one of the jurors had concealed on his voir dire examination the fact that he had made the following comment about the case before he was summoned for jury service:

"I don't see how in the hell anybody could see through the curtain and them pulled down and see anybody on the outside."

The juror's remark does not constitute an expression of an opinion as to the guilt or

innocence of the appellants. It merely questions the credibility of an identification of persons on the outside of the restaurant under the conditions assumed by the juror. Furthermore, the juror's comment was favorable to appellants' side of the case. Under these circumstances the question to be resolved is whether the juror could try the case impartially and without prejudice to the substantial rights of the appellants. Criminal Code of Practice, Section 209.

In Banks v. Commonwealth, 227 Ky. 500, 13 S.W.2d 511, 513, a new trial was sought upon the ground that one of the members of the jury, prior to being summoned for jury service, had said:

"I would like to get on the jury trying his case. I would acquit him."

The contention that the juror did not try the case impartially was rejected by the court and in the course of the opinion it was said:

"The cited cases from this court, and other foreign ones * * *, state the rule to be that the expression by a subsequently accepted juror of a favorable opinion to the litigant, who eventually loses his case, does not manifest partiality against him sufficient to authorize the setting aside of an unfavorable verdict against him. We anticipate, however, that, if it were shown on the hearing of the motion for a new trial that the favorably expressed opinion of the juror was a ruse for the purpose of getting on the jury in order to render an adverse verdict, a new trial should be granted; * * *."

In Neace v. Commonwealth, 313 Ky. 225, 230 S.W.2d 915, the rule stated in Banks v. Commonwealth, 227 Ky. 500, 13 S.W.2d 511, was held to be unsound. However, we have reconsidered the opinions in those two cases and have decided to adhere to the rule expressed in the Banks case because we are now convinced that no prejudice could result where the alleged bias was favorable to the complaining party. Criminal Code of Practice, Sections 209, 340. Our opinion in the Neace case is modified to this extent.

Therefore, we hold that the court did not err in denying appellants a new trial on the ground that a member of the jury had allegedly concealed his prejudice against them on voir dire examination.

It is insisted that an improper separation of the jury occurred after the case had been submitted for verdict and that the court erred in failing to grant a new trial on this ground. Criminal Code of Practice, Section 244. We are informed by three affidavits that while the jury was leaving the courtroom under guard to obtain its evening meal, one of the jurors walked unguarded to the rear of the courtroom to obtain his hat, and while he was about 90 feet away from the other jurors, he had a short conversation with two unidentified men. However, the juror stated in his counter-affidavit that he was accompanied by one of the bailiffs when he went to the rear of the courtroom to get his hat and that he did not talk with anyone on that occasion. The two bailiffs assigned to guard the jury stated in their affidavits that the jury had not improperly separated.

Where the proof is conflicting upon the question of the misconduct of a juror, the granting or refusal of a new trial rests largely in the sound discretion of the trial judge, and his decision will not be disturbed unless it clearly appears to be in error. Riley v. Commonwealth, Ky., 271 S.W.2d 882; Commonwealth for Benefit of City of Richmond v. Shelton, Ky., 248 S.W.2d 895; Pennington v. Commonwealth, 310 Ky. 265, 220 S.W.2d 556. Under the conflicting proof, it cannot reasonably be said that the trial judge abused his discretion in rejecting appellants' claim that the jury had separated and that the juror was guilty of misconduct.

Appellants contend that a certain statement made by the Commonwealth's

Attorney in his closing argument to the jury constituted prejudicial error. The record reflects that the court not only admonished the jury not to consider the statement of the prosecutor which was objected to, but further instructed the jury to consider the case upon the evidence and the instructions of the court. The admonition was not objected to, nor was there an exception saved to the ruling of the court. Under these circumstances appellants failed to preserve their right to have the alleged error reviewed. Riley v. Commonwealth, 298 Ky. 687, 183 S.W.2d 958.

 The newly discovered evidence relied upon by appellants as being sufficient to entitle them to a new trial is predicated upon an affidavit of Elihu Begley. In effect, Elihu Begley stated in his original affidavit that he saw Aaron Thomas fire the shots into the Valentine restaurant which killed Lillie Valentine. However, in a subsequent affidavit Begley repudiated the statement made in his former affidavit. Begley apparently had some difficulty in stating the true facts because he executed a third affidavit and therein he contradicted the statements he made in his second affidavit. Inasmuch as the newly discovered evidence had no probative value, the trial judge was justified in holding that this ground for new trial was insubstantial.

Appellants further urge that a new trial should be granted because of the circuit court clerk's activity in the case. It is undenied that after the court had ordered the sheriff to summons additional petit jurors to try the case the circuit court clerk notified some of her friends there was a probability of their being summoned for jury service if they made themselves available. Such activity is condemned. However, neither the trial judge nor the sheriff had any knowledge that the clerk was meddling in the case, but counsel for appellants was advised of this fact before he accepted the jury and the complaint concerning it after the verdict was not seasonably made. Burkhart v. Commonwealth, 312 Ky. 555, 228 S.W.2d 451; McIntosh v. Commonwealth, 234 Ky. 192, 27 S.W.2d 971; Caudill v. Commonwealth, 217 Ky. 403, 289 S.W. 371.

Judgments affirmed.